The next case for argument is 16-1502, Return Mail v. USPS. Mr. Rainey, good morning. I think we're ready to proceed. Good morning, Your Honors, and may it please the Court, Richard Rainey on behalf of Return Mail. We submit that the Board committed two fundamental errors in this case requiring reversal. First, the Board erred in finding that the Postal Service had standing under Section 18A1B to petition for CBM review. The Postal Service cannot be sued for infringement or charged with infringement as required by that section of the statute. A long line of unbroken authority from this Court and from the Supreme Court has held that Section 1498 actions sound in eminent domain and not in the tort of patent infringement. So do you think they deliberately excluded government agencies or you think it was just a necessary interpretation of the statute? So it is at a minimum a necessary interpretation of the statute, Judge Newman. I would argue in addition to hold otherwise would create an anomaly in the CBM statute where the government would be the only party that could file for a CBM petition but not be estopped from an adverse result in the CBM proceeding because the estopper provision is completely silent as to 1498 actions. Maybe no one in the Congress knew. Maybe no one told them that infringement actions can be brought in this Court. And what we know, and if that is the case, Your Honor, then the Beecham case from the they've been informed about 1498 actions but to imply the clear text of the statute. And I would argue that given this long line of cases going all the way back to Crozier, it's been very clear. So since you're devoted to the clear text of the statute, you'd agree that we shouldn't add limitations to the applicability of a statute that don't appear in its text? I think in general that's right, yes. And specifically it's right here then. I believe that's... Your principal argument asks this Court to construe 18A1B as limited to civil suits alleging infringement pursuant to 35 U.S.C. 271A, but 18A1B doesn't specifically, facially contain any such limitation. And you've already agreed with me that we shouldn't limit beyond the language of the text. Two responses to that. This Court in Suprema held that when Congress uses the term infringement in a statute, it's referring to the definition of infringement in 35 U.S.C. 271. But regardless, I would argue when Congress uses the term infringement, it does so in the context of what has been 100 years of clear precedent that a suit against the government under 1498 is not an action for infringement. Yes, it is. You have to establish infringement in order to obtain the remedy, which would be some sort of payment, some sort of royalty. But you have to prove infringement. So there is no question that there are relevant concepts, and the Motorola case from this Court made that point very clear. There are relevant concepts from Title 35 that are used... So I would argue Motorola says it's not. What Motorola says is... In Motorola, the Court was addressing 287, limitation on damages. That section of Title 35 says it applies to any action for infringement. What the Court in Motorola said is a suit under 1498 is not an action for patent infringement. It is an eminent domain action where the government is not the putative infringer, rather the licensee. So therefore, there's a distinction between a proceeding under 1498... Motorola says a lot of stuff, so I'm not suggesting that you're misciting it. But my read of Motorola is saying is that the government isn't, what they say, the position of an ordinary infringer, but it doesn't say the government can't infringe. And indeed, what it says is the government can only be sued for any direct infringement of a patent and not for inducing a patent. All I'm suggesting is Motorola is at best ambiguous in terms of what they meant. But I think a fair reading is that, as Judge Newman alluded to, the government can infringe. It's a question of what the remedies are. If we're in 1498, then clearly the remedies don't include an injunction. They don't include all of the things that 271A brings forward. That doesn't mean, though, necessarily, if you look at the statutory text, that the government can't be considered an infringer for purposes of CBM. So why am I wrong? So I would argue that if you would create an anomaly, if you say that sued for infringement, for example, in Section 18 means the government can petition for CBM review, but an action for infringement under 287 doesn't apply, what is the principal distinction between those two? The principal distinction is that when Congress created statutes, 271A also brings with it certain remedies that are available, including injunctions and damages. And 1498, the argument is, also deals with infringement. The words are the same in terms of the conduct of infringement in 271A and in 1498A. The difference is that 1498, there's no disagreement, that it's not tortious infringement. It deals with the government as a licensee. So the remedy, the relief, is different, but why is the liability different? So the underlying liability, obviously, as Motorola explains, the court does borrow the concepts from Title 35, but nowhere does 1498A use the term infringe or infringement. That statute is talking about an eminent domain taking by the government. But the cases that construe 1498A clearly talk about infringement. The suit in this case was called, was termed a suit for infringement. Clearly, that term is used to describe 1498A, and I would suggest to you it's because the liability portion of it is just, is very similar, if not the same, as 271A. The difference is the remedy. Well, and I would argue that what the government has done, it has taken the position that Title 35 is inapplicable to it in a number of instances. Crozier, Lisona, Calhoun, and they shouldn't be able to pick and choose what aspects of Title 35 are applicable to them and which portions are not applicable to them. I see no reason why, if the focus here is what did Congress intend by the word infringement, the goal there is to see, are they talking about Title 371? When the government acts, it acts with authority. 271A talks about whoever without authority makes use of itself as a particular invention. The government is always acting with authority. So I would argue it is not, it doesn't satisfy even the threshold for 271. And as I said, we have this anomalous result here where the estoppel provision would not apply only to the government. Well, I mean, there could be several answers for that. One is Congress just forgot and they can fix it if they want to. The other question is raised is why wouldn't that same argument hold in certain circumstances under the IPR proceedings? And so far, at least, the government has been using the IPR proceedings. So again, I think IPR and CBM are fundamentally different proceedings. The CBM is a limited proceeding, limited by the subject patent and limited by a standing requirement, whereas IPR is available to anyone other than the owner of the patent. So, including hedge funds and others who might not even have standing in court to proceed. So... But in those circumstances, there's no correspond... I understand the point you make about 1498 not having the estoppel provision, and I think it has some lags. But neither that same thing would inert to many cases under the IPR when it's brought by someone who is never going to be involved in infringement litigation with the patentee. Sure. So to put all of this emphasis on you need this corresponding estoppel if one side can bring it, the other side has to bring it, and we're trying to avoid district court litigation. That just doesn't hold for the IPRs and to a certain extent doesn't hold for CBMs. I think what seems clear is that nowhere in the AIA did Congress contemplate 1498 actions. And the Beecham Supreme Court decision makes clear we have to apply the clear text of the statute, not assume what Congress would have done had they been aware of 1498 or had that in mind when they were passing it. So I think a fair reading is here, the government is not in the position of an infringer and sued for infringement and charged with infringement should not inure to the benefit of the government here. Well, there's nothing to show it was excluded, right? It's just absent. It's not a person. The government is a person, technically. Yes. But my, I would say it's much more likely than not that it was an oversight. The real question is whether it's within this court's authority to remedy the oversight or send it back to the legislature. And I would argue that it is, it's not something this court should remedy. That's a legislative issue for Congress to resolve. Let me turn to- That's not necessarily the case. If we think the only oversight is with respect to the estoppel, then wouldn't you agree that it's the kind of oversight that it's up to Congress to decide whether they think it's, they need that symmetry there and they would add court of claims. I would argue that the absence of 1498 actions in the estoppel helps us understand the scope of what sued for infringement or charged for infringement means, going back to the point I made. I don't want to belabor that, but to me that's an interpretive tool. It's very clear when they were using those terms, at least to me, they were not talking about the government. The government's liability has been for a long time not considered a suit for infringement. Mr. Rainey, I know you have to defend your position, but I just want you to touch a little bit on the government's argument that we can't even review that determination. So two points on that, Your Honor. First, I would argue that standing to petition for a CBM review is very much within the realm of the Versada decision from this court, holding that the court clearly has authority to reach the invalidation authority of the PTAB. Why is this different than Acadie's? Acadie's, as this court explained, is dealing with a timing, a mere timing issue, as I think this court described it. Standing is a much more fundamental and a defining characteristic, just like the CBM character of the patent is a defining characteristic of CBM, so too is this standing requirement before the PTAB. And moreover, even under the Acadie's decision, we would argue we satisfy that as well. There's no other petition that could have been filed that could have raised the issues in this case. That is something uniquely within the control of return mail. This has never been asserted against anyone other than the government, and so therefore there's nobody that falls within either the sued for infringement or charged with infringement language of the statute. The second point I would make on reviewability is just that Quozo, I would argue, has made very clear that issues like limitations on the power of the agency are always subject to judicial review. I would argue this is very clearly a limitation on the power of the PTAB. On the one, if I can turn to the 101 issue, the PTAB here found, despite finding the claims were valid over the prior art commercially deployed ECS system as reflected in publications, that the return mail claims, quote, simply ensnared the abstract business process of relaying mailing address data. The claims in this case are not, the claims that we are appealing are not directed to the mere abstract idea of relaying mailing address data. They may involve that, but they're not directed to that. We think a unique feature of this case is the fact that there are numerous commercially deployed postal systems for dealing with mail, none of which are implicated by the claims of this pact. We have the NCOA process. We have the fact- So that's your preemption argument, right? That is a preemption, yes. But no, I mean, Ariosa suggested at least that absence of complete preemption. I mean, all the signals we have of preemption is that it's important, but complete preemption is not necessary. So if we're asked to draw the line, why should the line be drawn on your side? So I think Ariosa is easily distinguished in our case. Ariosa, the claims there were to all of the basically commercially practicable applications of that invention. We are totally on the other end of the spectrum there. These are very specific claims to an improved process for dealing with a major problem, which is returned mail, a very specific process requiring very specific data and very specific steps as reflected in, for example, figure three in the claims of the pact. We are not in a situation where we have even close to complete or all practical preemption. So I think this is much more like Bascom, where the absence of preemption was very significant to the court. And there have been a number of other decisions where this court has so held. But in addition to preemption, I would argue we have claims that did improve the processes for dealing with mail. And the U.S. Postal Service mail system, while it is a black box perhaps to a lot of us, we put our mail into the mailbox and off it goes, is a massive logistical system. This is an invention that was designed to fit into that massive logistical environment and improved. It's unquestionable. It is an improvement on the process by encoding specific data, very specific data into a piece of mail. After that mail comes back returned, decoding that information and doing one of two things with that information. How can that decision stand if it can't be appealed? I'm sorry, Your Honor? You're talking about now the PTAB rule? I'm talking about the 101 decision on the merits from the PTAB. If this court decides that it can reach the merits of this decision, which we would argue it should not, then we would ask that the court reverse the... Let's say we agree with you that we can't reach the merits. Then how could that have proceeded at all in the PTAB? It should never have proceeded in the PTAB. And the decision should be vacated and we should be back into the court of federal claims where our case is currently stated, where we can try this case on the merits. Okay, I thought you were arguing the PTAB decision. I am. But that's only an alternative if we reject your standing argument. That is correct, Your Honor. So just to sum up on this, we believe we have a unique situation here. We have a very broad abstract idea adopted by the PTAB, advocated by the Postal Service. There is no question that our specific claims are a process, series of process steps, which are not directed to that broad concept. They may involve it, but there are lots and lots of ways. In fact, I would argue that broad concept could apply to virtually every process the Postal Service is using. Thank you. We'll restore a few minutes of rebuttal. Let's hear from the other side. Good morning, Your Honor. May it please the court? The PTAB properly found that Claims 42 to 44 of the 548 patent were not patentable under 35 U.S.C. Section 101. They applied the two-step analysis of Alice and Mayo, concluding that claims are directed to the abstract idea of relaying mailing address data. Claim 42 to 44 confirmed that this was... What about your friend's argument that there's a preemption argument here, a case here, because this is such a near, drawn to such a near opioid? Certainly, Your Honor, and a review of the claims made clear that there is still a preemption concern. The claims themselves are directed to receiving mail with a preference marked on it, identifying as undeliverable mail after it's returned, reviewing the preference on the mail, generating data based on the mail, and then sending it along to the original mailer if they want corrected address information. There's nothing tied to a specific technology or to a particular way of doing it. Now, for the preemption concern specifically, in the brief, RMI argued that because their claims were not invalidated under a particular 102 reference that was considered by the PTAB, that somehow signals that there was no preemption. But I would point the courts to the decision of the PTAB, Appendix 23, where they said that their decision on 102 was dealing specifically with the reference, what was explicitly in the reference, not by what the Postal Service actually was doing. So a lot of the disputes between the two parties, between return mail and Postal Service, at the PTAB over whether the claims should be invalidated under 102 dealt with what the Postal Service was actually doing within the equipment it was using. Just to refresh my recollection, the PTAB said that it was not invalid as anticipated. It was not invalid as anticipated under 102 because the particular reference itself did not explicitly or inherently disclose the feature of decoding. Now there was testimony put on as to what actually happened to the Postal Service's system, but the PTAB said that doesn't matter. What we're looking at is a particular 102 argument based on a single reference. We can't go out and look at what was actually being done by the Postal Service. We're limited by what's particularly in front of us in the document. Okay. Can I, can we, at least for my purposes, I'd like to go back to the standing argument with your friend. Certainly. Okay. Let's assume reviewability here. And why isn't your friend's argument compelling? That we're trying to discern what Congress's intent was. There's no reference to word infringement in 1498A, and there's importantly, significantly, no corresponding estoppel in the CBM that could ever be applied to the government in this case. Why aren't at least those two factors enough to suggest that there's no standing here? And if we get it wrong, the question is, who is it, whose role is it to clean it up? And that it's Congress's role to clean it up, even if that was their intent. Certainly, Your Honor. I think that the important thing is to go back and look at the specific language of Section 18. When they wanted to define who could file a petition, who a proper petitioner was, they used the word sued for infringement. So in 18A1A, they used the word sued for infringement. They didn't say sued for infringement under a particular cause of action. They didn't say sued for infringement in district court under 271. They used the word sued for infringement. If you look at other subparts of Section 18, when Congress wanted to specifically spell out a particular cause of action, this is with the estoppel provisions, with the venue provisions, they actually said what causes of action they had in mind. They said 271, 281, for estoppel. Well, that's easy. That's easy. They also say any person. Yes, Your Honor. How do you handle that? Yes, Your Honor. So the government is a full participant in the patent system. We obtain patents. We enforce patents. We filed declaratory judgment aspirations in district court about ownership of patents. But it's not a person. There's nothing to suggest that for the purpose of this particular statute, the government should not be interpreted as a person entitled to file a CBM petition. Now, neither of the parties have briefed the issue. So if Your Honor has particular concerns about whether the government is a person, we'd be happy to offer supplemental briefing on it. Well, if you look at the official definition, a person includes businesses, entities, incorporated or unincorporated partnerships, all sorts of entities. The government is listed nowhere in the standard definitions of person, in the standard legal definitions of person. So I understand, Your Honor. Unless, of course, you go to international personality. Yes, Your Honor. I would offer that we would have to go back and look at a particular statute and determine whether the government was intended to be incorporated within the definition of person by Congress. There's nothing to suggest in the, as I was starting to say, there's nothing to suggest in the venue provisions or in the estoppel provisions that the Congress had any inclination or any suggestion that sued for infringement should be limited to a particular cause of action. I agree with that. But still, it's a clear distinction, and I'm interested in your view as to how to get around it because I can't think of any reason why the government would be excluded. Your Honor, I don't believe there's any reason the government would be excluded from petitioning for CBN. But they were excluded. But the, I'm sorry, Your Honor? They were excluded because they're not a person. Your Honor, for purposes of the statute, I believe the government would be included as a person. The government is a full participant in the patent system. There are congressional, there are statutes that directly address the government obtaining patents. The government, for example, the Bayh-Dole Act, dealing with when the government obtains patents. So there's nothing. Did you understand what I said by international personality? Your Honor, I am not familiar with that particular case. For purposes of international law, including the international patent system, the government is a person. States are persons. Thank you, Your Honor. So the, ultimately, the standing issue is a question of whether the Congress intended to exclude the government from a party that sued. Can I ask you, I know my colleagues may disagree, but I think that the absence, the omission of the estoppel provision is of some significance. I mean, a large point of the whole AIA was not to give people two bites at the apple. It was to do the opposite. It was to create a streamlined system so that the patent office would do the work that would otherwise be done by the courts and resolve these patent issues quickly and presumably with some expertise. That whole shtick is omitted from this CBM proceeding in terms of the government. So why isn't that, at least way heavily in our analysis, in construing a statute which does not use the word infringement, which is the word used in Title 18, I'm sorry, in the CBM provision, and go the other way? And construe Congress's intent as going the other way? Certainly, Your Honor. And I would point to the venue provisions, the estoppel provisions. In fact, the venue provisions apply only for 271 actions. That's not to suggest that the estoppel provisions wouldn't apply to 1337 actions. So there is a steady narrowing of what particular causes of action would be applicable for particular provisions in Section 18. So venue only applied in 271 or 281 actions. For purposes of estoppel, it only applied in 1337 or 1338 actions. So when they use the word sued for infringement, it certainly suggests when they want to use a particular cause of action, they do so. There is a long statutory history of 1498 being referred to. Well, wait, isn't that your friend's argument and not yours? If the suggestion is that when they want to use a specific term, they do so, that would suggest that sued for infringement doesn't appear in 1498A, and therefore it should not be included. I don't understand your argument. Certainly, Your Honor. The point I was making, if they wanted to limit the word sued for infringement to mean a suit under 271, which is what Return Mail seems to suggest, they would have said a suit under 271, not generally a suit for infringement. Now there is a long line of history in which, as Your Honor pointed out during Return Mail's argument, of where the words sued for infringement and suit for infringement are used to describe what is a 1498 cause of action. When it was originally enacted, they referred to it as allowing for suits of infringement to go against the United States. There's a long history of using the words sued for infringement, suit for infringement to describe 1498 actions. So if Congress— But Congress knows how to say it. We know they know how to say it because they said it directly. They used the word infringement in 1498B and C, I guess, right, with respect to copyrights? Yes, Your Honor. They did use the word infringement dealing with copyrights. So they know— in one particular subsection of a statutory provision and not in the other. Aren't we supposed to assume that that has some meaning? Certainly, Your Honor. So if my recollection serves, the reason sued for infringement or the word infringement appeared in 1498B was to deal with potential for criminal liability. There was concerns that the government employees, such as in an intelligence gathering, would somehow be liable. So when the DMCA was enacted, there was an issue with whether the word sued for infringement should appear. So I'm happy to provide some supplemental information on that. But the word infringement appeared later in 1498B. So for purposes of using the word sued for infringement, there's nothing to suggest in the statute that sued for infringement doesn't include 1498, especially where Congress did use 271 in subsections of Section 18. When they wanted to say 271, they did so. I want you to address your argument that we don't have authority to review the PTAB's standing determination. Certainly, Your Honor. And— No, I'll tell you what I want you to do. Yes, Your Honor. You contend that the PTAB's separate statutory authority to render a final written decision in the absence of a petitioner supports the view that we have no authority to review the standing determination. If we accept that position, aren't we rendering meaningless every condition proceeding for PTAB action in 18A1? Your Honor, I understand that this Court is taking on both questions as to whether Acades v. Apple is going to be reversed. I don't want to spend time on addressing Acades v. Apple, and I certainly don't want to somehow limit what the government is able to argue. We are— What about Versada, then? Versada is good law. There's no suggestion that we're taking that en banc. Your brief—I forget the exact term you used, but it was something like, even if Versada is still good law after Cuozo. Yes, Your Honor. Has the government challenged anything about Versada during or after the Cuozo opinion? Is there anything going on in our court that you're aware of that would question the validity of Versada post-Cuozo? Your Honor, I'm not aware of anything currently pending before the Court challenging the validity of Versada. So do you believe that we're supposed to follow Versada, that it's good law and good precedent and we're compelled to follow it? For purposes of this appeal, we assumed that Versada remained to be good law in the post-Cuozo decision. So why is this distinguishable from Versada? In Versada, the question was being addressed whether the particular CBM petition was, or the particular patent was a CBM patent. So in Versada, this Court determined that whether a patent was or was not a CBM patent was a limitation on the authority of the Patent Office to invalidate a particular patent. Now, Your Honor, you referenced the 227A, I believe, which refers to the— 327A. 327A, I apologize, which refers to whether or not the Patent Office can continue to invalidate a patent or cancel a patent after every petitioner is gone. Now, I would argue that the identity of a particular petitioner is not relevant for purposes of whether the Patent Office has authority to cancel a patent. So similar to—or different from what was in Versada. Versada dealt with what this Court interpreted was a limitation on the authority to invalidate a patent. And don't you think this case presents a question of whether the Board has acted in excess of its statutory jurisdiction? Your Honor, I certainly do not want to take any positions that would be in conflict with our arguments that will be offered. So you're abandoning this argument, then? No, no, we're not abandoning this argument. You've already taken a position. We've got your briefs. Yes, Your Honor. And the issue is— You can't have it both ways. No, no. No, I understand, Your Honor. We believe that if Acades is confirmed, it offers a very strong argument why this Court does not have authority to review the institution decision here. Now, to the extent— Now, please answer my question. Do not read this case as presenting an issue which directly implicates whether the Board has a statutory—operated in excess of its statutory jurisdiction. Is that not the issue presented in this case? It is not, Your Honor. The reason it is not is I would point to the 327 provision, which permits the Board to invalidate a patent even if every single petitioner has left the case. So if everybody settles out, the Board still has authority to invalidate a particular patent. Is that under CBM 2 or is that under IPR? That's under CBM 2, Your Honor. So your reading of the statute is the reason the Government has—the Board has authority to review this is because even if there was nobody on either side of this, they would have authority to do it? I thought that had to do with when a case was appropriately before it and then the parties settled. I didn't think—I didn't construe that provision as operating if we construe not being a proper party before it in the first instance. Your Honor, the—again, for 327A, it shows that the identity of a particular petitioner is not relevant for the authority of the PTAB to invalidate a patent versus in Versada, the question was whether a particular patent could be invalidated at all. But I think in all of those cases, there was an intervention by the Director to continue the action. I don't think that there was any where it continued where the challenger just disappeared. Your Honor, I'm not familiar with the particular facts of those cases you're referring to. But to the extent that the statutory language is provided, it says that the PTAB can continue and validate a patent even if all petitioners have left. Yeah, but the issue here is whether or not the government in the first instance could have filed this. It's not a matter of whether they continue to be a petitioner if they happen to settle off the case. Do you think that's the same issue? Keep in mind the question I asked you in the first place. Yes, Your Honor. If your argument is correct, you're throwing everything out, every single prerequisite. No, Your Honor. I don't want to come across as throwing out everything. But what I'm saying is that when the identity of the petitioner is the issue that's being challenged, 327 suggests that the identity of the petitioner is not a limitation on the authority. But again, I would certainly defer to the government's brief that will be submitted in the… I'm not aware of the PTAB being able to suspend the answer to a CBM petition. Well, then you've defeated your own argument. We're… You've exceeded your time. Thank you, Your Honor. Thank you very much. Just a few quick points, Your Honors. First, on where the government's argument started on preemption, I think it's important to understand there was not only a CBM proceeding, there was a prior re-exam as well. Filed by the Postal Service, which ate up about four years of time and had a whole bunch of references considered, and over which these claims were found patentable. Second, the reference that the government is talking about, for which there may be a later validity dispute, for example, based on testimony about actual system, still doesn't deal with the multiple other mail relaying systems that are out there, such as NCOA, Fast Forward, and PARS. There's no question those are not implicated by the claims in this patent. These are very specific claims to a very specific process affecting a technological improvement in the mail processing industry. This is not a computer software case. We're not arguing for improvement in the operation of a computer. That's not what's going on here. But we are arguing for an improvement in mail processing. Finally, on the issue of the word infringement in Section 18, the government made the argument that the fact that it says sued for infringement and does not go on to say sued for infringement under 271 is significant. However, 1337 has the bare word infringement as well. And this court held en banc and suprema that that term, when it's used by Congress, is that the government can violate because it requires without authority. And that's all I have. Unless the court has any other questions. Thank you.